



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

LEONARD FOREHAND, JR. PLAINTIFF

VERSUS CIVIL ACTION NO. 1:03cv672WJG-JMR

RYAN'S FAMILY STEAK HOUSE, INC.;
JON GERARD and JOHN and JANE
DOES 1-5 DEFENDANTS

MEMORANDUM OPINION

This cause is before the Court on motion of the Defendants, Ryan's Family Steak House, Inc. [Ryan's], and Jon Gerard for summary judgment [30-1] pursuant to Federal Rule of Civil Procedure 56. Also pending before the Court is the Defendants' motion to strike [36-1] the expert designation by the Plaintiff. The Court has duly considered the record in this action, and the briefs of counsel, and being fully advised in the premises, concludes as follows.

Statement of Facts

Leonard Forehand, Jr., ate Father's Day lunch at Ryan's on June 18, 2000. (Ct. R., Doc. 30, Exh. A, Compl., p. 2.) During the lunch, Forehand ate chicken wings. (*Id.*, Exh. B, p. 3.) Forehand stated that he did not notice anything unusual about the wings when he ate them. (*Id.*, p. 10.)

The Friday before Father's Day Sunday, Forehand reported having eaten a baked potato with butter, snack food, including crackers and such. (*Id.*, p. 3.) On the day after Father's Day, Forehand became sick, and felt worse in the ensuing days. (*Id.*, p. 5.) On the Thursday after Father's Day, he went to the hospital for treatment and was found to have salmonella poisoning.

(*Id.*, pp. 5-6.) Forehand did not have a sample of the food he consumed and knows of no other person who became ill after eating at Ryan's that day. (*Id.*, pp. 9-10.) He contends that the chicken he ate at Ryan's was not completely cooked and that was what caused his illness. (*Id.*, p. 6.)

According to Ryan's, Forehand has failed to prove that any practice of Ryan's caused his food borne illness, thereby entitling Ryan's to summary judgment on Forehand's claims. (Summ. J. Mot., pp. 2-3.) Ryan's asserts that Forehand has no real evidence that the chicken wings were the source of his illness, or that the wings were not properly cooked. (*Id.*, p. 6.)

Forehand asserts that he went to Ocean Springs hospital on June 22, 2000, complaining of fever, shaking chills associated with vomiting, diarrhea and nausea. (Pl.'s Resp., p. 1.) He was admitted to the hospital and diagnosed with salmonella poisoning. (*Id.*) He began to fall ill on Monday, June 19, 2000, and was discharged from the hospital on June 29, 2000, with a discharge diagnosis of salmonella gastroentreritis and lower gastrointestinal bleeding secondary to the salmonella poisoning. (*Id.*, p. 2.)

He returned to the hospital on June 30, 2000, complaining of swelling and pain in his right arm. (*Id.*) He suffered complications from the intervenous drip used to administer medication to him during the June 19-29 stay in the hospital. He was discharged on July 5, 2000, with a diagnosis of thrombosis of the venous system of the right arm, hypertension, and status post-salmonella infection. (*Id.*)

Dr. Paul M. Pavlov, Forehand's treating physician, averred that the symptoms presented on Monday were consistent with having come into contact with food contaminated with salmonella on Sunday, June 18, 2000, the day Forehand dined at Ryan's. (*Id.*, Exh. A, p. 2.) Dr.

Pavlov stated that Forehand testified in a deposition that he ate a T-bone steak, baked french fries, a few chicken wing legs and a mixture of cooked okra with tomatoes and a roll at Ryan's on June 18, 2000. (*Id.*)

Forehand was admitted to the hospital. (*Id.*, Exh. A, p. 4.) The discharge summary provides Forehand's diagnosis as "lower GI bleeding secondary to Salmonella gastroenteritis." (*Id.*, Exh. B, p. 2.) Forehand stated that the only thing he had besides the food consumed at Ryan's on the day before the incident was coffee. (*Id.*)

In rebuttal, the Defendants maintain that Forehand also owned a dog, which he does not remember coming in contact with on the day of the incident. (Def.'s Reb., Exh. A, p. 12.) In addition, Forehand brought some of the steak he had ordered from Ryan's home and ate it at home. (*Id.*, p. 40.) The Defendants maintain that the Centers for Disease Control indicate that the handling of pets and cross-contamination with otherwise sterile food in an unsterilized environment may cause transmission of salmonella. (*Id.*, Exh. B.) These could have been the cause of the salmonella poisoning experienced by Forehand in June 2000, according to the Defendants. (Defs'. Reb., p. 3.)

In addition, Ryan's contends that Forehand has not established that Ryan's actions in handling the food breached a standard of care and led to his becoming ill with salmonella, which the Defendants assert is essential to Forehand's case. (*Id.*) Ryan's asserts that Forehand must show either that the food consumed at Ryan's was contaminated or that there was no other means by which he became ill from salmonella other than the food he ate at Ryan's. (*Id.*, p. 5.) Ryan's contends that Forehand's assertion that Dr. Pavlov's statement proves that the salmonella was

caused by food consumed at Ryan's is not correct, because under Mississippi law, Forehand has not met his burden of proof in a case of foodborne illness. (*Id.*, p. 6.)

On February 7, 2005, the Plaintiff designated Dr. Pavlov as an expert in the case, indicating that he was expected to testify about Forehand's medical treatment. (Ct. R., Doc. 35.) In support of the motion to strike the expert designation of Dr. Pavlov, the Defendants contend that the Plaintiff's expert designation was due on February 1, 2005, according to the scheduling order. (Ct. R., Docs. 23, 36.)

According to the Plaintiff, a designation of expert was delivered to Tom Carpenter, attorney of record for the Defendants by facsimile [fax] on the afternoon of February 1, 2005. (Ct. R., Doc. 38, p. 1.) The document was filed with the Clerk of the Court on February 7, 2005. (Ct. R., Doc. 35.) The Defendants contend the Plaintiff cannot find a record that the fax was in fact sent on February 1, 2005. (Ct. R., Doc. 39, p. 2.) Carpenter sent a request for a copy of the fax register to the Plaintiff's attorney. (*Id.*, part 2.) In response, Paige Cornelius, an employee of law firm representing Forehand, responded to the request in a letter in which she states that she sent the fax on February 1, 2005, after 5:00 P.M. (*Id.*, part 3.) She also indicates that she was out ill for two days, thus delaying the filing of the document with the court. (*Id.*) She states that the fax register has been misplaced. (*Id.*)

## Conclusions of Law

### I. Motion to Strike

Rule 16(b) of the Federal Rules of Civil Procedure authorizes the district court to control and expedite pretrial discovery through a scheduling order. FED.R.CIV.P. 16(f). The Court has "broad discretion to preserve the integrity and purpose of the pretrial order." *Hodges v. United*

*States*, 597 F.2d 1014, 1018 (5th Cir. 1979). The Court considers the following four factors when deciding whether to exclude an expert witness for failure to timely designate: (1) the importance of the excluded testimony, (2) the explanation of the party for its failure to comply with the court's order, (3) the potential prejudice that would arise from allowing the testimony, (4) the availability of a continuance to cure such prejudice. *E.E.O.C. v. General Dynamics Corp.*, 999 F.2d 113, 115 (5th Cir. 1993).

In this case, Dr. Pavlov was used in the Plaintiff's rebuttal to Defendants' motion for summary judgment to address causation, thereby alerting the Defendants that Dr. Pavlov might be called to give expert testimony about that subject. *See Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 883 (5th Cir. 2004). This emphasizes the importance of his testimony and eliminates any prejudice which might arise from allowing the testimony. According to the Plaintiff's explanation, notice of the designation was faxed to counsel for the Defendants on time, but notice was not submitted to the court record due to illness. Given the importance of Dr. Pavlov's testimony in this case, the Court finds that striking the designation of him as an expert, when the Defendants had notice he was likely to testify regarding causation by the response to the motion for summary judgment is unduly harsh. The Court further concludes that the motion to strike should be denied. To ensure that such deadlines are followed in the future, the Court directs the Plaintiff's attorney to submit $100 to counsel for the Defendants as a sanction for failure to timely designate their expert, especially when this designation could have been electronically filed on the proper date.

II. Summary Judgment

A grant of summary judgment is appropriate when, viewed in the light most favorable to the nonmoving party ". . . the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact . . ." FED. R.CIV.P. 56(c). The moving party initially carries the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Materiality connotes disputes over facts which might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). Further, ". . . summary judgment will not lie if the dispute about a material fact is `genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Once the burden of the moving party is discharged, the burden shifts to the nonmoving party to go beyond the pleadings and by his own affidavits, or by depositions, answers to interrogatories, and admissions on file, present specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e). If the opponent fails in his duty, summary judgment is implicated.

To prove that negligence on the part of the Defendants caused Forehand's illness and injury, Forehand must prove by a preponderance of the evidence that the food he ate at Ryan's was tainted and that his illness was the result of eating it. *Goodwin v. Misticos*, 207 Miss. 361, 42 So.2d 397, 402 (Miss. 1949). Negligence of the manufacturer cannot be presumed from the mere fact that the food purchased may have caused the illness of the consumer. *Johnston v. Swift & Co.*, 191 So. 423, 425 (Miss. 1939). Under the negligence theory, the plaintiff must plead and prove (1) a duty owed by the defendant to the plaintiff; (2) breach of such duty; and (3) that the

breach was the proximate cause of the injuries sustained by the plaintiff. *Grisham v. John Q. Long V.F.W. Post, No. 4057, Inc.*, 519 So.2d 413 (Miss. 1988). There is no direct evidence that the Defendants' food was tested and found to contain salmonella bacteria. The Plaintiff must come forward with more than Forehand's testimony regarding what he thought caused his illness and the doctor's opinion formed from the history provided by Forehand himself. *John Morrell & Co. v. Schultz*, 208 So.2d 906, 907 (Miss. 1968).

The mere fact that an injury has occurred, without more, is not evidence of negligence on the part of anyone. *Goodwin*, 42 So.2d at 407. Proximate cause may be proven by the circumstances of a case if the circumstances permit a reasonable inference of a cause of injury for which the defendant is responsible, and excludes equally reasonable inferences of other causes for which the defendant is not responsible. In other words, "[t]here must be sufficient additional evidence presented, other than the plaintiff's testimony, to lead the jury to conclude that the defendant caused the negligence." *Mississippi Dept. of Transp. v. Cargile*, 847 So.2d 258, 263 (Miss. 2003). The mere fact that Forehand became ill sometime after eating at Ryan's, without more, cannot establish negligence on the part of Ryan's. *See i.e., Johnston v. Swift & Co. of Illinois*, 191 So. 423, 425 (Miss. 1939). Evidence, other than Forehand's testimony that the chicken he consumed at Ryan's caused his illness is lacking in this case. Accordingly, the Court concludes that the motion for summary judgment should be granted. *See Mississippi Dept. of Transp. v. Cargile*, 847 So.2d 258, 263 (Miss. 2003).

## Conclusion

For the reasons given above, this Court finds that the Defendants' motion for summary judgment [30-1] should be granted. The Court further finds that the motion to strike [36-1] the

expert designation should be denied. To ensure that such deadlines are followed in the future, the Court directs the Plaintiff's attorney to submit $100 to counsel for the Defendants as a sanction for failure to timely designate their expert, especially when this designation could have been electronically filed on the proper date.

A separate Final Judgment in conformity with and incorporating by reference the foregoing Memorandum Opinion shall issue this date. Each party shall bear its respective costs associated with these motions.

THIS the 27th day of June, 2005.

/s/ *Walter J. Gex III*
UNITED STATES SENIOR DISTRICT JUDGE